## RECORD NO. 13-4573

In The

# United States Court Of Appeals
## For The Fourth Circuit

# UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

# CALVIN DWIGHT MITCHELL, a/k/a Calio,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH**

_____

**BRIEF OF APPELLANT**

_____

**W. Andrew LeLiever**
**THE LAW CORNER**
**211 East Six Forks Road**
**Suite 205**
**Raleigh, NC  27609**
**(919) 424-8319**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA 23219
804-249-7770  ♦  www.gibsonmoore.net

# <u>TABLE OF CONTENTS</u>

<u>PAGE:</u>

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION................................................1

STATEMENT OF THE ISSUES......................................................2

STATEMENT OF THE CASE.........................................................2

      Statement of the Facts..........................................................3

SUMMARY OF THE ARGUMENT .................................................12

ARGUMENT ...................................................................................14

   I.    WHETHER THE TRIAL COURT ERRED IN FINDING
       SENTENCING FACTORS.................................................14

      A.   Standard of Review ................................................14

      B.   Argument ................................................................14

   II.   WHETHER THE DISTRICT COURT ERRED, AS A
       CONSTITUTIONAL OR FACTUAL MATTER, IN FINDING
       AS A SENTENCING FACTOR THAT APPELLANT
       CONSPIRED TO DISTRIBUTE COCAINE BASE (CRACK) ........21

      A.   Standard of Review ................................................21

      B.   Argument ................................................................22

CONCLUSION................................................................................30

REQUEST FOR ORAL ARGUMENT ..............................................31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES:

*Alleyne v. United States*,
　　133 S. Ct. 2151 (2013)......................................................................27, 28

*Apprendi v. New Jersey*,
　　530 U.S. 466 (2000)........................................................................26, 29

*Gall v. United States*,
　　552 U.S. 38 (2007)...............................................................................21

*Koon v. United States*,
　　518 U.S. 81 (1996)...............................................................................21

*Pinkerton v. United States*,
　　328 U.S. 640 (1946)..............................................................................18

*United States v. Arambula*,
　　238 F.3d 865 (7th Cir. 2001) .................................................................17

*United States v. Bacallao*,
　　149 F.3d 717 (7th Cir.1998) ...........................................................18, 19, 20

*United States v. Baldivid*,
　　465 F.2d 1277 (4th Cir. 1972) ...............................................................24

*United States v. Bice-Bey*,
　　701 F. 2d 1086 (4th Cir. 1983) ..............................................................24

*United States v. Booker*,
　　543 U.S. 225 (2005)..............................................................................21

*United States v. Bryant*,
　　991 F.2d 171 (5th Cir. 1993) .................................................................14

*United States v. Cedano-Rojas*,
　　999 F.2d 1175 (7th Cir. 1993) ...........................................................16, 19

*United States v. Crockett*,
   82 F.3d 722 (7th Cir.1996) ........................................................................19

*United States v. Daniels*,
   770 F.2d 1111 (D.C. Cir. 1985) ...........................................................24, 25

*United States v. DiZenzo*,
   500 F.2d 263 (4th Cir. 1974) ....................................................................24

*United States v. Echeverri-Jaramillo*,
   777 F. 2d 933 (4th Cir. 1985) ..................................................................24

*United States v. Engle*,
   592 F.3d 495 (4th Cir. 2010) ....................................................................21

*United States v. Gaudin*,
   515 U.S. 506 (1995)...................................................................................27

*United States v. Hatchett*,
   31 F.3d 1411 (7th Cir. 1994) ....................................................................16

*United States v. Hernandez*,
   330 F.3d 964 (7th Cir. 2003) ....................................................................17

*United States v. Hinojosa*,
   484 F.3d 337 (5th Cir. 2007) ....................................................................14

*United States v. Johnson*,
   248 F.3d 655 (7th Cir. 2001) ....................................................................17

*United States v. Johnson*,
   324 F.3d 875 (7th Cir. 2003) ....................................................................19

*United States v. Johnson*,
   643 F.2d 735 (4th Cir. 1980) *cert. denied*,
   451 U.S. 907, 101 S. Ct. 1974, 68 L. Ed. 2d 295 (1981) .............................24

*United States v. Patel*,
   131 F.3d 1195 (7th Cir. 1997) ..................................................................19

iv

*United States v. Peterson*,
    101 F.3d 375 (5th Cir. 1996) ........................................................................14

*United States v. Quintanilla*,
    2 F.3d 1469 (7th Cir. 1993) .........................................................................17

*United States v. Rivera*,
    411 F.3d 864 (7th Cir. 2005) ......................................................................18

*United States v. Rodriguez*,
    67 F.3d 1312 (7th Cir. 1995) ......................................................................18

*United States v. Ruiz*,
    178 F.3d 877 (7th Cir. 1999) ................................................................ 19-20

*United States v. Sanders*,
    942 F.2d 894 (5th Cir. 1991) ......................................................................14

*United States v. Skyles*,
    7 F.3d 1331 (7th Cir. 1993) .........................................................................20

*United States v. Taylor*,
    72 F.3d 533 (7th Cir. 1995) .........................................................................16

*United States v. Thornton*,
    554 F.3d 443 (4th Cir. 2009) ......................................................................21

*United States v. Townsend*,
    924 F.2d 1385 (7th Cir. 1991) ....................................................................18

*United States v. Trigg*,
    119 F.3d 493 (7th Cir. 1997) ......................................................................18

*United States v. Wall*,
    180 F.3d 641 (5th Cir. 1999) ......................................................................14

*United States v. Woods*,
    484 F.2d 127 (4th Cir. 1973) ......................................................................24

## STATUTES:

18 U.S.C. § 2 .......................................................................................2, 12

18 U.S.C. § 3231 ......................................................................................1

18 U.S.C. § 3742 ......................................................................................1

21 U.S.C. § 841(a)(1) ..........................................................................2, 11, 12

21 U.S.C. § 841(b) ..................................................................................18

21 U.S.C. § 846 ...................................................................................2, 11

21 U.S.C. § 851 ........................................................................................2

28 U.S.C. § 1291 ......................................................................................1

## CONSTITUTIONAL PROVISIONS:

U.S. Const. amend. V ...............................................................................29

U.S. Const. amend. VI ........................................................................*passim*

## SENTENCING GUIDELINES:

U.S.S.G. § 1B1.3 ..........................................................................14, 15, 18

U.S.S.G. § 1B1.3(a) .................................................................................16

## RULES:

Fed. R. App. P. 4(b)(1) ...............................................................................1

Fed. R. App. P. 4 (b)(6) ..............................................................................1

No. 13-4573

—————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————————

UNITED STATES OF AMERICA
Plaintiff/ Appellee,

v.

CALVIN DWIGHT MITCHELL
Defendant/ Appellant.

—————————————

On Appeal From the United States District Court
For the Eastern District of North Carolina
(The Hon. Terrence W. Boyle)

—————————————

BRIEF OF THE APPELLANT

—————————————

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. That court entered the judgment of conviction and sentence on July 25, 2013. Calvin Dwight Mitchell timely filed his notice of appeal on August 5, 2013. *See* Fed. R. App. P. 4(b)(1), (b)(6). Therefore, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

1

**STATEMENT OF THE ISSUES**

I.    WHETHER THE TRIAL COURT ERRED IN FINDING CERTAIN SENTENCING FACTORS.

II.   WHETHER THE DISTRICT COURT ERRED, AS A CONSTITUTIONAL OR FACTUAL MATTER, IN FINDING AS A SENTENCING FACTOR THAT APPELLANT CONSPIRED TO DISTRIBUTE COCAINE BASE (CRACK).

**STATEMENT OF THE CASE**

In August 2012, the appellant, Calvin Dwight Mitchell (hereinafter "Mitchell" and/or "Appellant"), was indicted for Count One: conspiracy from March 2001 to May 24, 2012, to distribute and possess with the intent to distribute cocaine base (crack) and cocaine (21 U.S.C. §§ 841(a)(1), 846), and Count Two: aiding and abetting the distribution of cocaine on May 24, 2012 (21 U.S.C. § 841(a)(1); 18 U.S.C. § 2). J.A. 14-15. The Government filed two notices to seek enhanced penalty pursuant to 21 U.S.C. § 851, increasing the mandatory minimum to life in prison. J.A. 19-20, 23A-23C. A jury trial was held in the Eastern District of North Carolina before the Honorable Terrence W. Boyle on February 25 and 26, 2013. J.A. 27-347. The jury returned a verdict of guilty on both counts. J.A. 348-49. However, the special verdict form found with regards to Count One, a quantity of cocaine but zero (0) grams of cocaine base (crack). J.A. 348-49. On July 19, 2013, the court enhanced Mitchell's sentence based upon relevant conduct of cocaine base (crack), which had been presented at trial. J.A. 350-61. The court

2

imposed a 360-month concurrent sentence for Counts One and Two. J.A. 361. Mitchell timely appeals his conviction for Count One and his sentence.

### Statement of the Facts

The Government presented eight witnesses in their case-in-chief. Selma Jerome (hereinafter "Jerome") was the Government's confidential informant that was buying drugs and guns from the co-defendant Sherard Brunson. (hereinafter "Brunson"). Jerome negotiated a purchase of guns from Brunson on May 21, 2012, at the Express Lube in Smithfield. On that day, Brunson offered to sell Jerome drugs at a future time. J.A. 50.

On May 24, 2012, Brunson called Jerome and offered to sell him cocaine. J.A. 50. After this phone conversation, Jerome called law enforcement to set up a controlled buy. J.A. 50-51. Law enforcement gave Jerome $1,200 and a video recorder for the controlled buy. J.A. 51. Later in the day on May 24, 2012, Jerome and Brunson were to meet at the Walmart parking lot in Smithfield, North Carolina. J.A. 52. The parties met at Walmart but did not conduct the buy there. Brunson told Jerome to follow him (Brunson) to a different location, a Pizza Hut. J.A. 53. They arrived at the Pizza Hut, waited for some time, and did not conduct the buy. At that time, Brunson told Jerome to get in the vehicle with him. However, Jerome refused and testified that he was scared because he thought he would be robbed. J.A. 53. Jerome stood in the Pizza Hut parking lot while Brunson

made more calls. Brunson instructed Jerome to follow him to make the buy. Brunson picked up Mitchell and drove to a CITGO. J.A. 54-55. Brunson and Mitchell waited in their car for about five minutes, and then they got out and approached Jerome. Jerome testified that they waited outside their cars for another 10 minutes. At some point, Jerome was told that Mitchell's brother was coming.[1] When the man identified as Mitchell's brother arrived in the Ford F-150, Mitchell and Brunson walked over, Mitchell got the cocaine from the driver and gave the cocaine to Brunson. J.A. 58. Brunson then took the cocaine to the window of his car and showed it to Jerome, and Jerome gave Brunson the $1,200. Brunson took the money, counted it, and took his cut, and then he handed the remainder of the money to Mitchell who then handed it to the person in the truck. J.A. 59-60. Once the drug transaction was complete, all parties left the scene.

Detective Jason Guseman (hereinafter "Guseman") testified that he was the law enforcement agent that was in charge of this controlled buy and surveillance. He was a part of the operation to buy the gun on May 21, 2012 and the cocaine on May 24, 2012 from Brunson.  Guseman was initially conducting an investigation of Lionel Lamonte Cox, a distributor, that led them to Brunson. J.A. 112. On May 24, 2012, Guseman went from place to place following the confidential informant

---

[1] Later trial testimony revealed, through Brunson, that Mitchell does not have a brother; rather, Lawrence McNeil, a/k/a Tiger, was the driver and distributor of the drugs.

and Brunson, set up a video camera in the parking lot of the McDonald's across the street from the CITGO gas station, and videotaped the cocaine transaction. J.A. 87-103. After the transaction had occurred, the parties left the CITGO gas station and Jerome was debriefed.

On July 20, 2012, Guseman and Special Agent Stephen Babits (hereinafter "Babits"), who later testified, arrested Mitchell for the May 24, 2012 transaction. J.A. 104. During an interview with Mitchell after he was arrested, Detective Guseman showed Mitchell a screenshot of the video of the drug transaction that was recorded on May 24, 2012. Mitchell admitted that he was the "guy there with the sweatpants" in the screenshot. J.A. 105-06. After being read his Miranda rights, Mitchell waived them. J.A. 104-05. Mitchell gave an unprotected statement to Guseman and Babits regarding historical drug information and the location of Sherard Brunson. Mitchell told them that for the past thirteen years, he had purchased seven ounces of crack cocaine per week from an unidentified person in Clayton, North Carolina, and that since he was fifteen years old, he had also purchased between six and seven ounces of crack cocaine per week until July 2012 from Nate McPadgan, an unknown drug dealer in Johnston County. J.A. 106. Guseman wanted to know where Brunson lived. Mitchell did not know the address, but he drew a map of where Brunson lived, which led to Brunson's arrest. J.A. 108-09.

At the time Mitchell gave this statement, Guseman testified that Nate McPadgan was on the run from police. At the time of trial, Guseman testified that McPadgan was in federal custody. J.A. 119. Additionally, Guseman was not sure whether McPadgan was in federal custody when Mitchell was fifteen years old. Guseman knew of Mitchell's criminal history and more recently of the extensive time Mitchell had spent in jail. Guseman admitted that there was no evidence other than Mitchell's own statement that the historical information was accurate. J.A. 120. However, Guseman testified that at the time Mitchell gave his statement there was nothing to indicate that he was exaggerating. Additionally, Guseman testified that Mitchell's name was synonymous with drugs. J.A. 111, 126.

Babits admitted that during the interview on July 20, 2012, Mitchell told he and Guseman that he (Mitchell) had met up with Brunson to smoke drugs together but not for the drug transaction. J.A. 309. Mitchell had repeatedly stated during the interview that he had nothing to do with the transaction. J.A. 309. Babits testified, over objection, that he was aware that Mitchell was in prison 75 months in the past ten years. J.A. 294-95. However, the Presentence Report calculates Mitchell's jail time as 226 weeks total. J.A. 378-81. Both Guseman and Babits were aware that Mitchell's statement was not correct based on what they knew of the time he spent in custody.

Special Agent Patti Carroll testified as to the results of the May 24, 2012 drug testing. J.A. 129-30. She was able to confirm that the substance was cocaine with a net weight of approximately 27.61 grams. J.A. 132. The Government submitted a lab report through the agent with the subject name blacked out. On cross examination, Carroll revealed that she did not black out the subject's name on the report and the subject's name was Sherard Brunson. She also revealed that all suspects are to be listed on that form under the name column. J.A. 137-38.

The co-defendant Brunson testified that he bought cocaine base (crack) ten times from Mitchell from late 2010 to May 2012, with the exception of the five months he was in jail in 2011. J.A. 140-41. (The jury returned a special verdict sheet of 0 grams of cocaine base (crack).) Brunson was not able to give any dates or amounts for any of those purchases. He said he did not deal with Mitchell until 2010 but he knew him prior. Brunson was also in custody from May 2005 to November 2008. J.A. 207-08. He stated that the police had told him during his interview that Mitchell told the police that he (Brunson) was a drug dealer. J.A. 205. Brunson also testified that he was in federal custody at the time of the trial, and he had pled guilty to the charges of possession of a firearm by a felon and conspiracy to distribute cocaine from the May 21, 2012, and May 24, 2012, firearm and drug transactions. J.A. 141.

On May 24, 2012, Brunson said he met the confidential informant, Jerome, at the Walmart in Smithfield, North Carolina, and then, Brunson told Jerome to follow him to a Pizza Hut to meet a person named Gristle for the cocaine. J.A. 144. Brunson had originally called a person named Tweezie for the cocaine, but Tweezie was out of town so he told Brunson he would send a person named Gristle in his place. When they arrived at the Pizza Hut, Gristle was not there so Brunson told Jerome to follow him to another location. J.A. 145. Brunson testified that he called Mitchell, who said he would help Brunson out if he would come pick him up. Jerome followed Brunson to pick up Mitchell, and they then went to the CITGO gas station where they were going to meet a third person. J.A. 146. Brunson, Mitchell, and Jerome waited outside their cars for the additional party to arrive at the CITGO for about fifteen minutes. J.A. 147. Brunson testified in open court that the additional party was Mitchell's brother. J.A. 148. The Court inquired about Mitchell's brother with the jury present. Brunson later admitted to signing a statement, while he was in custody saying that Mitchell had nothing to do with the drug transaction. J.A. 149-50. The Court questioned Brunson and asked: "How could he [Mitchell] not know anything about it [the drug transaction] if his brother was the one that showed up with the dope?" J.A. 151.

When a gray Ford F-150 arrived, Mitchell and Brunson walked over, Mitchell got the cocaine (one ounce), and he gave it to Brunson. J.A. 155. Brunson

then gave the cocaine to Jerome, and Jerome gave Brunson the $1,200. Brunson took his cut of the money, and then, he handed the remainder of the money to Mitchell who then handed it to the person in the truck. J.A. 155-56. Once the drug transaction was complete, all parties left the scene.

On cross-examination, Brunson admitted that he knew Mitchell's family. He knew that Mitchell had sisters and a grandmother but did not have a brother. J.A. 204, 210. He admitted that the man in the Ford F-150 was actually Lawrence McNeil a/k/a Tiger (hereinafter "Tiger"). J.A. 211. He had not told the Government who Tiger, the distributor, was even though he had signed a plea agreement to tell the truth. He had known Tiger for some time but revealed that he was afraid of him. J.A. 224. He believed Tiger was also in custody.

Captain Alex Fish (hereinafter "Fish") testified, over objection, to Mitchell's cocaine base (crack) criminal conviction from October 2002. J.A. 228-30. Fish testified that Mitchell dealt 0.1 grams of cocaine base (crack) to another person in a controlled buy. J.A. 229-30. He testified, over objection, that Mitchell pled guilty and was sentenced to jail for that offense. J.A. 232. (The Government filed a second enhancement based on this offense. J.A. 23A-23G.) The Government then asked Fish: "Did you have any idea back in 2002 and 2003 that you would be here testifying in a federal case in 2013?" J.A. 232. The Appellant's attorney objected to this question. In response, the Court questioned the Government, outside the

presence of the jury, what the purpose of this line of testimony from Captain Fish was, and the Government responded that it was for substantive reasons. J.A. 242. The Court stated that the Government would not be able to prove a conspiracy from 2001 to 2010 based on the information provided. The Court stated:

> I thought he [Captain Fish] was talking about a sale contemporary to the trial here May 24th, then I looked at the indictment and you had it scratched out 2010 and penciled in 2001, and apparently signed by somebody or initialed by somebody. And I know from years, and years, and years ago when all we tried were conspiracies that you had to create the conspiracy before you can have the hearsay and other things like that that came in. And you don't have a conspiracy on March 2001.

> J.A. 234.

The Court went on to say that the Government could not prove a conspiracy without any proof other than hearsay. "Before the hearsay can come in, there has to be proof of the illegal agreements and that's what you don't have." J.A. 235-36. The Government admitted that they have to have more than just a statement from Mitchell saying that he sold drugs in the past. J.A. 238. However, the Government then went on to say that in addition to Mitchell's statement, they were "showing the controlled buys that weren't conducted from him as well as his admissions to selling drugs on these occasions throughout the period of the conspiracy." J.A. 238. The Court then replied that the Government would need to prove the conspiracy first by independent evidence before using Mitchell's statement to show the conspiracy. J.A. 238-39.

10

Sergeant Joseph Whitley (hereinafter "Whitley") and Sergeant Sam Jones (hereinafter "Jones") testified, over objections, to Mitchell's 2006 cocaine base (crack) criminal charges and convictions, from which Mitchell had pled guilty. J.A. 253-61, 265-76 (The Government's first notice of enhancement was based on one of the drug transactions about which Whitley and Jones testified. J.A. 19-23.) The officers testified that Mitchell received approximately 13-16 months in prison consecutively for the multiple 2006 convictions.

Jones testified that Mitchell was a suspect in a 2011 murder investigation. He went on to say that he (Jones) is still working on the case and no one had been charged at that time. J.A. 280.[2]

Through the Government's witnesses, there was testimony of multiple cocaine base (crack) convictions from 2002 through 2006 but only for a combined weight total of 2.1 grams of cocaine base (crack). The Government did not offer any testimony of a co-conspirator of Mitchell's from 2001-2010. Brunson testified to the 2010-2012 conspiracy.

The jury returned a verdict of guilty on Count One: conspiracy from March 2001 to May 24, 2012, to distribute and possess with the intent to distribute cocaine (21 U.S.C. §§ 841(a)(1), 846), and a verdict of guilty on Count Two:

---

[2] The Presentence Report revealed that the information concerning the murder investigation was given by a Lawrence McNeil, a/k/a Tiger. Brunson testified that Tiger was the drug distributor for the May 24, 2012, cocaine deal. This information was not provided to Defense Counsel prior to trial.

aiding and abetting the distribution of cocaine on May 24, 2012 (21 U.S.C. § 841(a)(1); 18 U.S.C. § 2). The jury specifically held in a special verdict form, with regards to Count One, a quantity of cocaine but zero (0) grams of cocaine base (crack). J.A. 348-49. The court sentenced Mitchell on July 19, 2013, which was entered on July 25, 2013. J.A. 360-61, 363-68.

## SUMMARY OF THE ARGUMENT

I.    The Court must vacate and resentence the Appellant as to the correct relevant conduct and sentencing factors. The district court erred in finding factors at sentencing such as Appellant's responsibility for the alleged amount of cocaine base (crack) and two point enhancements for intimidating a witness. The jury returned a special verdict form of zero (0) grams of cocaine base (crack) during a conspiracy period of 2001-2012. Additionally, Appellant's statement indicated a weekly drug transaction, but the convicted conspiracy was based on a single drug transaction. The Government was not able to show a conspiracy from 2001-2010. There was a significant temporal period, more than five years, between the alleged criminal conduct and the convicted conduct. The Appellant argues the court abused its discretion by allowing a two-point enhancement for obstruction of justice without clear information and evidence regarding the obstruction. The court's error renders Appellant's sentence unreasonable, and this Court must vacate it and remand for resentencing.

12

II.     The Court must vacate and resentence the Appellant as to the drug amount for constitutional reasons. The district court erred at trial and sentencing by allowing testimony and evidence of Appellant's character and bad acts to corroborate his unprotected statement. First, the Court allowed testimony of character evidence after questioning the Government on their intentions and legal authority. Second, the jury returned a special verdict form of zero (0) grams of cocaine base (crack) during a conspiracy period of 2001-2012. The district court's usurpation of the jury's fact-finding role violated the rule that all facts that increase a defendant's punishment must be proven to a jury beyond a reasonable doubt. Second, aside from the constitutional infirmities of the district court's actions, the court erred as a factual matter. The evidence was insufficient, even under a preponderance standard, to prove that Appellant was involved in a conspiracy to distribute that amount of cocaine base (crack) during the alleged time period. Appellant's statement indicated a weekly drug transaction, but the convicted conspiracy consisted of a single drug transaction. There was a significant temporal period, more than five years, between the alleged criminal conduct and the convicted conduct. The court's error renders Appellant's sentence unreasonable, and this Court must vacate it and remand for resentencing.

# ARGUMENT

## I.    WHETHER THE TRIAL COURT ERRED IN FINDING RELEVANT CONDUCT AS A SENTENCING FACTOR.

### A.    Standard of Review

A district court's interpretation and application of the Guidelines is reviewed *de novo* and its factual determinations are reviewed for clear error. "A finding by the district court that unadjudicated conduct is part of the same course of conduct or common scheme or plan is a factual determination subject to review . . . under the clearly erroneous standard." "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Peterson*, 101 F.3d 375, 384 (5th Cir. 1996). *United States v. Hinojosa*, 484 F.3d 337, 340 (5th Cir. 2007) (internal quotation marks and citation omitted). *See United States v. Wall*, 180 F.3d 641, 644 (5th Cir. 1999) ("A district court's determination of what constitutes relevant conduct for purposes of sentencing is reviewed for clear error."); *United States v. Bryant*, 991 F.2d 171, 177 (5th Cir. 1993) ("[S]pecific factual findings regarding relevant conduct are reviewed on appeal only for clear error."); *United States v. Sanders*, 942 F.2d 894, 897 (5th Cir. 1991).

### B.    Argument

§ 1B1.3. Relevant Conduct (Factors that Determine the Guideline Range)

(a)    Chapters Two (Offense Conduct) and Three (Adjustments). Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii)

14

specific offense characteristics and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)    solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)    all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)    any other information specified in the applicable guideline.

(b)    Chapters Four (Criminal History and Criminal Livelihood) and Five (Determining the Sentence). Factors in Chapters Four and Five that establish the guideline range shall be determined on the basis of the conduct and information specified in the respective guidelines.

Federal Sentencing Guidelines Manual § 1B1.3 (2013).

The commentary accompanying the Guidelines explains that "common scheme or plan" and "same course of conduct" are "two closely

15

related concepts." Two or more offenses are part of a common scheme or plan if they are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." Offenses are part of the same course of conduct if they are "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." Factors indicating that two or more offenses are part of the same course of conduct include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3(a). *See also Cedano-Rojas*, 999 F.2d at 1180 (factors include "similarity, regularity, and temporal proximity of the incidents in question"); *United States v. Hatchett*, 31 F.3d 1411, 1419 (7th Cir. 1994) (factors include similarity of parties, geographic relationship, temporal relationship, and "any other relationship between the convicted offense and the relevant conduct"); *United States v. Taylor,* 72 F.3d 533, 548 (7th Cir. 1995).

In this case, Appellant denies the drug weight which was calculated based on what Appellant told federal agents on July 20, 2012. J.A. 388. Appellant believed that if he disclosed more drug activity, the agents would have allowed him to cooperate as a confidential informant and avoid criminal charges. Appellant was in

custody from 2006- 2010. J.A. 388. The Appellant contends that he should be held accountable for a total of 2.1 grams of cocaine base (as noted in 03CRS56419, 06CRS50129, 06CRS50131, 06CRS50133, 06CRS50142, 06CRS50243-50245, and 06CRS50246) and for the controlled delivery of 27.61 grams of cocaine on May 24, 2012. Those substances produce a marijuana equivalency of 13.02 kilograms, which results in a base offense level of 16. J.A. 388.

Whether conduct is part of a charged conspiracy, or outside of it, is largely determined by the scope of the agreement as described in the indictment. *United States v. Arambula*, 238 F.3d 865, 869 (7th Cir. 2001) ("The indictment defined the [conspiracy] scope by charging Arambula, Hand, and others unknown with conspiring to distribute cocaine on or about April 12-14, 1999."); *United States v. Quintanilla*, 2 F.3d 1469, 1480 (7th Cir. 1993) ("Through its ability to draft the indictment, the government 'is the master of the scope of the charged RICO conspiracy.'" (citation omitted)); *e.g.*, *United States v. Hernandez*, 330 F.3d 964, 969 (7th Cir. 2003) ("The language in Count 1 of the indictment charges the defendants with a conspiracy to sell crack cocaine in the Lathrop Homes and to exclude other sellers through the use of violence."); *see United States v. Johnson*, 248 F.3d 655, 665 (7th Cir. 2001) (There was no error in admitting evidence of illegal activity outside the time frame of the charged conspiracy where the jury was

given limiting instruction to prevent broadening the scope of the crimes charged in rendering its verdict.).

*Pinkerton v. United States*, 328 U.S. 640 (1946), governs the quantity of drugs which count when applying the sentencing provisions of 21 U.S.C. 841(b). *United States v. Rodriguez*, 67 F.3d 1312, 1324 (7th Cir. 1995) (while the analysis of the drug quantities involved in a conspiracy resembles the relevant conduct inquiry under § 1B1.3 of the U.S. Sentencing Guidelines, the analysis actually proceeds under *Pinkerton*). Under *Pinkerton*, drug quantity that is material to the mandatory minimum sentence in a conspiracy case includes "all criminal acts within the scope of the conspiracy and foreseeable to the accused." *United States v. Rivera*, 411 F.3d 864, 866 (7th Cir. 2005) (emphasis added), *citing Pinkerton, supra. See also United States v. Townsend*, 924 F.2d 1385, 1399 (7th Cir. 1991) (the offense of conspiracy is complete at the time of agreement, whether or not its object is ever achieved); *United States v. Trigg*, 119 F.3d 493, 505 (7th Cir. 1997) (conspiracy requires proof of an agreement, to which the defendant was a party, to commit an unlawful act).

When deciding whether uncharged conduct is part of the same course of conduct, a court should assess whether there is "a strong relationship" between the uncharged conduct and the offense of conviction, looking to whether there is "significant similarity, regularity, and temporal proximity." *United States v.*

*Bacallao*, 149 F.3d 717, 719 (7th Cir. 1998) (quotations omitted). A court must

consider "the identity of the participants and their roles in the events at issue, as

well as the nature, structure and location of the allegedly related transactions."

*United States v. Cedano-Rojas*, 999 F.2d 1175, 1180 (7th Cir.1993). But courts

have also warned that the relevant conduct guideline "must not be read to

encompass any offense that is similar in kind to the offense of conviction, but that

does not bear the required relationship to that offense." *Bacallao*, 149 F.3d 717,

719-20 (7th Cir. 1998) (quotations omitted); *see also United States v. Crockett*, 82

F.3d 722, 729 (7th Cir. 1996) (noting that the relevant conduct guideline "should

not be applied to offenses that are of the same kind, but not encompassed in the

same course of conduct or plan as the convicted offenses." *United States v.*

*Johnson*, 324 F.3d 875, 879 (7th Cir. 2003).

A defendant is not automatically responsible under the relevant conduct

guideline for all drug transactions revealed by the record, but only for those that

are part either of the same course of conduct as the charged offense or of a

common scheme or plan including the charged offense. *United States v. Patel*, 131

F.3d 1195, 1204 (7th Cir. 1997). A sentencing court must consider whether there

are distinctive similarities between the offense of conviction and the remote

conduct that signal that they are part of a single course of conduct rather than

isolated, unrelated events that happen only to be similar in kind. *United States v.*

*Ruiz*, 178 F.3d 877, 882 (7th Cir. 1999), quoting *United States v. Skyles*, 7 F.3d 1331, 1336 (7th Cir. 1993). District courts must look to a "strong relationship between the uncharged conduct and the convicted offense, focusing on whether the government has demonstrated a significant similarity, regularity, and temporal proximity." *Bacallao*, 149 F.3d 717, 719 (7th Cir. 1998) (citations omitted).

In this case, Count One charged that Appellant, from March 2001 to May 24, 2012, conspired to distribute with the intent to distribute (280) grams or more of cocaine base (crack) and a quantity of cocaine based on his unprotected statement. J.A. 14. The Government presented evidence of Appellant's unprotected statement as substantive evidence and attempted to corroborate that evidence with a multitude of cocaine base (crack) sales in 2002 and 2006. At the close of trial, Appellant requested a special verdict form to correctly reflect the amount of weight of either cocaine base (crack) or cocaine that the jury could find as part of the conspiracy from 2001 to 2012. J.A. 348. The jury found that Appellant had conspired to sell and distribute an amount of cocaine but no amount (0 grams) of cocaine base (crack). J.A. 348. The July 20, 2012, statement and the May 24, 2012, conspiracy involved very separate offenses. In the July 20, 2012, statement, the Appellant accounted for a conspiracy to distribute 6 ounces of cocaine base (crack) but the only sale was cocaine in the May 24, 2012, conspiracy and that was distributed by Lawrence McNeil, a/k/a Tiger. The July 20, 2012, statement

20

indicated a weekly drug transaction but the May 24, 2012, conspiracy consisted of a single drug transaction with evidence that the co-conspirator (Brunson) regularly dealt with someone else (Tweezie). J.A. 144-145.  The Appellant argues that there was a significant temporal period when he was in custody prior the May 24, 2012, conspiracy. J.A. 294-95, 378-81. The court's error renders Appellant's sentence unreasonable, and this Court must vacate it and remand for resentencing.

## II.  WHETHER THE DISTRICT COURT ERRED, AS A CONSTITUTIONAL OR FACTUAL MATTER, IN FINDING AS A SENTENCING FACTOR THAT APPELLANT CONSPIRED TO DISTRIBUTE COCAINE BASE (CRACK)

### A.    Standard Of Review

After *United States v. Booker*, 543 U.S. 225 (2005), Courts of Appeal review District Courts' sentencing decisions for "unreasonableness," *i.e.*, for abuse of discretion. Appellate review has two components, one procedural and one substantive. *See United States v. Engle*, 592 F.3d 495, 500 (4th Cir. 2010); *see also Gall v. United States*, 552 U.S. 38, 51 (2007). "A district court by definition abuse its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). This Court reviews a district court's legal conclusions *de novo* and its factual findings for clear error. *United States v. Thornton*, 554 F.3d 443, 445 (4th Cir. 2009).

### B.    <u>Argument</u>

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI.

In this case, the Government presented the Appellant's statement as substantive evidence and multiple prior plea convictions from 2002 through 2006 to prove the conspiracy for over 280 grams or more of cocaine base (crack). However, the Government was unable to present any witnesses to corroborate the Appellant's statements or conspiracy from the 2001 to 2010 dates of the indictment. The Court questioned the Government regarding evidence they intend to present of a conspiracy from 2001 to 2010. The Court and the Government (Assistant U.S. Attorney Renfer) discussed the conspiracy out of the presence of the jury:

THE COURT:  So your position is that you can put on a police officer and say what do you know about the defendant? I know that I took his statement. All right. And what did he say?  He said I was in a conspiracy from 2001 to 2012. Okay. To do what? To distribute drugs. Okay, I rest, and that's your case.

MR. RENFER:  But that's not my case. I understand the Court's point –

22

THE COURT:  But the point is –

MR. RENFER:  – if it was strictly his statement –

THE COURT:  Yeah.

MR. RENFER:  to do that? Yes I could admit it, but I think it's a matter of law –

THE COURT:  And then rest and that would be – and you would prove the crime?

MR. RENFER:  No, your Honor, because the Court would select our rule – would prohibit a jury from finding – returning a guilty verdict when it's just a person's statement. You have to have something outside of just his statement to corroborate his statement so to speak. His statement is admissible and his statement can be used to establish guilt, but it can't be used by itself. There does have to be something else to it. Just like someone admitting a murder, going into police and say and I killed a guy two weeks ago and they would have a body, and all they would have is a statement. You can't convict him of it. You have to have something else besides a statement. And, in this case, I have a statement saying I dealt drugs from way back when, and I'm showing the controlled buys that weren't conducted from him as well as his admissions to selling drugs on those occasions throughout the period of the conspiracy.

J.A. 237, 238.

The Trial Court made an error when it allowed testimony on the Appellant's prior crimes, hearsay, and bad acts over timely objections of the Appellant's attorney. The Government edited the indictment as to Count One to extend the conspiracy charge from 2010 to 2001. The Government presented evidence of Mitchell's multiple prior plea convictions from 2002 through 2006 of cocaine base (crack) but did not present any witnesses to corroborate a conspiracy during that

time. The witnesses testified not only as to the convictions but also as to the jail sentences that Mitchell received as a result. In allowing this evidence, the Trial Court committed an error that can only be rectified by a reversal of the convictions.

The standard of review for the admission of other extrinsic act evidence requires that the trial court determine if the proffered evidence is relevant to an issue other than the accused's character. If so, then the trial judge must balance the probative value of such evidence against the danger of undue prejudice arising from this evidence. *United States v. Echeverri-Jaramillo*, 777 F. 2d 933, 936 (4th Cir. 1985), quoting *United States v. Johnson*, 643 F.2d 735, 737 (4th Cir. 1980), *cert. denied*, 451 U.S. 907, 101 S. Ct. 1974, 68 L. Ed. 2d 295 (1981); *United States v. Bice-Bey*, 701 F. 2d 1086, 1089 (4th Cir. 1983), *cert. denied*, 464 U.S. 837, 104 S. Ct. 126, 78 L. Ed. 2d 123 (1983). In assessing the probative value of such extrinsic act evidence, the trial court must take into consideration not only relevance but also the necessity and reliability of the evidence. *United States v. DiZenzo*, 500 F.2d 263 (4th Cir. 1974); *United States v. Woods*, 484 F.2d 127, 134 (4th Cir. 1973); *United States v. Baldivid*, 465 F.2d 1277, 1283 (4th Cir. 1972).

In *United States v. Daniels*, 770 F.2d 1111 (D.C. Cir. 1985), the D.C. Circuit recognized the prejudicial impact of allowing a jury to learn of the accused's criminal record. Although deciding a severance issue, in language relevant here, the D.C. Circuit explained that:

24

> The exclusion of bad acts evidence is founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds. . . . That juries treat prior convictions as highly probative has been confirmed by empirical investigations. . . . Such reliance by the trier of fact offends the "long standing tradition that protects a criminal defendant from 'guilt by reputation' and from 'unnecessary prejudice.'"

770 F.2d at 1116 (citations omitted).

The Court allowed testimony from the Government's witnesses about Appellant's prior criminal convictions, over objections. Captain Fish, Sergeant Whitley, and Sergeant Jones testified not only as to the multiple convictions from 2002 and 2006 but also as to the jail sentences that Appellant received as a result. J.A. 250, 308, 309. The Court's admission of such evidence compromised the Appellant's rights to a fair and impartial jury.

The Court questioned the Government, out of the presence of the jury, as to what evidence they would be able to admit of the conspiracy from 2001-2010. The Government responded:

> MR. RENFER: Well, the defendant did have direct knowledge of the conspiracy.

> THE COURT: Who?

> MR. RENFER: The defendant did. It was his own statement, so what I'm doing is, I am collaborating his statement. I'm introducing his statement saying I've gone back this far. And then the evidence, I'm introducing is the evidence and talked about saying, alright I've got to have something just beyond his statement, so I'm showing that he was dealing drugs from 2002 and 2005.

THE COURT:  He has to be doing it with somebody else.

MR. RENFER:  Right.  But that's what I'm saying.  He has to get the cocaine from somebody.

THE COURT:  No.

MR. RENFER:  You can't just create it.

THE COURT: No. There's plenty of possession with intent to sell and deliver – delivery or transfer of cocaine without it being a conspiracy.  It doesn't have to be a conspiracy.

MR. RENFER: Your Honor, given Sherard Brunson's testimony (from 2010-2012), would the Court allow me to amend the time, the time isn't an exceptional element of the offense to amend it from 2001 to 2010, since that is necessarily included within the time frame that I originally allege.

J.A. 240, 241.

*Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), concluded that any "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" are elements of the crime, *id.* at 490 (internal quotations omitted), and thus, the Sixth Amendment provides defendants with the right to have a jury find those facts beyond a reasonable doubt, *id.* at 484. *Apprendi*'s principle applies with equal force to facts increasing the mandatory minimum since a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed. *Id.* at 490. Because the legally prescribed range *is* the penalty affixed to the crime, it follows that a fact increasing either end of the range produces a new penalty and constitutes an

26

ingredient of the offense. It is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime**.** The fact that criminal statutes have long specified both the floor and ceiling of sentence ranges is evidence that both define the legally prescribed penalty. It is also impossible to dispute that the facts increasing the legally prescribed floor aggravate the punishment, heightening the loss of liberty associated with the crime. Defining facts that increase a mandatory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment, see *id.* at 478-79, and preserves the jury's historic role as an intermediary between the State and criminal defendants. *See United States v. Gaudin*, 515 U.S. 506, 510-11, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995). The essential Sixth Amendment inquiry is whether a fact is an element of the crime. "[T]here is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum." *Alleyne v. United States*, 133 S. Ct. 2151, 2163 (2013).

The Sixth Amendment right to a jury trial, along with the Due Process Clause, requires that each element of a crime be proven to a jury beyond a reasonable doubt. *United States v. Gaudin*, 515 U.S. 506, 510, 115 S. Ct. 2310, 132 L. Ed. 2d 444 (1995). "The touchstone for determining whether a fact must be found by a jury beyond a reasonable doubt," under the Sixth Amendment right to a jury trial, in conjunction with the Due Process Clause, "is whether the fact

27

constitutes an 'element' or 'ingredient' of the charged offense." *Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013) (citations omitted). The Sixth Amendment right to a jury trial applies when the finding of fact both alters the legally prescribed sentencing range and does so in a way that aggravates the penalty, as opposed to fact finding used to guide judicial discretion in selecting punishment that is within the limits fixed by law. "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to a jury." *Alleyne v. United States*, 133 S. Ct. 2151, 2162 (2013). "Within the limits of any discretion as to punishment which the law may have allowed, the judge, when he pronounces sentence, may suffer his discretion to be influenced by matter shown in aggravation or mitigation, not covered by allegations of indictment." *Alleyne v. United States*, 133 S.Ct. 2151, 2163 (2013) (citations omitted).

When the Presentence Report (hereinafter "PSR") recommended a Base Offense level of 38, based on 150 kilograms of cocaine base (crack) that was charged in the indictment but not found at trial, Appellant objected, arguing that the verdict form clearly indicated that the jury did not find a conspiracy for cocaine base (crack) of any amount beyond a reasonable doubt. J.A. 388. The PSR obstructed conduct was based on an unnamed confidential informant (CI) that the Appellant argued had no information. J.A. 377. The appellant objected that the

information was not accurate and that the CI had assaulted him. J.A. 389. At sentencing the Appellant revealed the name of the proposed CI, which was confirmed by the government, and the fact that the CI had a prior relationship with Appellant girlfriend who is the Appellant's baby's mother. Appellant objected to the proposed PSR, which reflected a base total offense level of 40, based on 152 kilograms of cocaine base (crack), for which the guideline range is 360 months to life. However, the statutorily authorized maximum sentences are less than the maximum of the applicable guideline range; therefore, the guideline range is 360 months to 720 months. J.A. 386. The Appellant objected to the guideline range. J.A. 388, 389.  Appellant argues that a court's finding of fact that would raise the mandatory maximum, based on conduct for which he had been acquitted by the jury, would violate his Fifth and Sixth Amendment rights as recognized in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). J.A. 928-31. Appellant believes that a conspiracy to distribute cocaine base (crack) is an element that must be found by the jury, not a sentencing factor.

At sentencing, the district court's finding was erroneous, because the evidence was insufficient to prove that Appellant conspired to sell cocaine base (crack) within the scope of the guidelines, even under a preponderance standard. The Government acknowledged that they were aware that Appellant was in prison for a term of at least 74 months from 2006 to 2010. J.A. 294-95. The Government

was only able to show a conspiracy from 2010-2012 with Sherard Brunson, who had no criminal connection with Appellant prior to 2010. J.A. 240, 241. The Government was aware that the only alleged co-conspirator named from 2001 to 2010 was McPadgan who was in custody. J.A. 107, 119-120. Additionally, the Government's witness, Babits, admitted that there was no evidence other than Appellant's statements that Appellant ever conspired with McPadgan. J.A. 120.

This Court should vacate the sentence and remand for resentencing, with a twenty-year maximum.

## **CONCLUSION**

For the above stated reasons, the Court should reverse the decision of the Trial Court with instructions to resentence pursuant to the Federal Sentencing guidelines and the Appellant's Sixth Amendment rights.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Counsel for appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

Respectfully submitted this the 12th day of May, 2014.

THE LAW CORNER

<u>/s/ W. Andrew LeLiever</u>
W. Andrew LeLiever
N.C. State Bar # 37384
211 East Six Forks Road
Suite 205
Raleigh, NC 27609
Office: (919) 424-8319

*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

     this brief contains <u>7,308</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

     this brief has been prepared in a mono-spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>

<u>/s/ W. Andrew LeLiever</u>
W. Andrew LeLiever

*Counsel for Appellant*

Dated: May 12, 2014

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on May 12, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jennifer P. May-Parker
OFFICE OF THE
  UNITED STATES ATTORNEY
Federal Building
310 New Bern Avenue
Suite 800
Raleigh, NC  27601

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219